UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ARMAN GHANEI | ) | Case No. 03-14557-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| GORDON P. PEYTON, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 04-1211 |
| | ) | |
| PANTHEA MOHTASHAM | ) | |
| | ) | |
| Defendant and | ) | |
| Third-Party Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ARMAN GHANEI | ) | |
| | ) | |
| Third-Party Defendant | ) | |

**MEMORANDUM OPINION**

A trial was held on May 26, 2005 on the complaint of the third-party plaintiff to determine the dischargeability of her divorce-related claims against the debtor. For the reasons stated, the court determines that the debtor's obligation to make payments into a college fund for the children of the parties and to pay her a stipulated sum each month to assist with her mortgage payment are in the nature of support and therefore nondischargeable. The court further determines, however, that the debtor's obligation to reimburse her for $15,000 she paid to settle a preference complaint by the trustee is dischargeable. Finally, the

court determines that the debtor's obligation to convey a timeshare is not a debt at all but

rather in the nature of a property interest and therefore not dischargeable.

<u>Background</u>

A.

The complicated procedural background underlying the controversy is set forth with

some detail in this court's prior opinion partially granting and partially denying the debtor's

motion to dismiss the third-party complaint[1] and will be repeated only to the extent necessary

to place the remaining issues in context.

The debtor, Dr. Arman Ghanei, and the third-party plaintiff, Ms. Panthea Mohtasham,

were married on March 26, 1993.  Following their separation and the commencement of

divorce proceedings, they entered into an agreement entitled "Agreed Settlement of Equitable

Distribution Issues" dated August 7, 2003.  This agreement was later incorporated into a

divorce decree issued by the Fairfax County Circuit Court.  The settlement agreement set

forth several obligations that Dr. Ghanei owed to Ms. Mohtasham, including: (1) transfer of

the marital residence located at 1542 Crowell Road, Vienna, Virginia; (2) a lump-sum

payment of $30,000 against a second deed of trust on the marital residence; (3) payment to

her of the remaining balance (approximately $20,000) on the second deed of trust, to be made

in installments over a five-year period; (4) transfer of a Florida timeshare; and (5) payment of

$70,000 over eight years into a trust fund to be used for the children's college education.  The

agreement recites that the obligation to pay the second deed of trust "shall be deemed to be a

lump-sum alimony not dischargeable in bankruptcy, not taxable to the Wife and not

_____

[1] *Peyton v. Mohtasham (In re Ghanei)*, No. 03-14557-SSM, A.P. No. 04-1211 (Bankr. E.D.
Va., Oct. 26, 2004).

deductible by the Husband." It further recites that the college fund payments "shall be
deemed to be a lump-sum child support not dischargeable in bankruptcy." The settlement
agreement expressly did not resolve "issues of spousal support and child support and counsel
fees and costs." These were determined by the divorce court, which ordered the debtor to
make payments of $2,000 per month for spousal support and $857 per month for child
support.

The debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code in this
court on October 6, 2003, and received a discharge on January 19, 2004. The deadline for
filing a complaint to determine nondischargeability of a debt excepted from discharge under
§§ 523(a)(2), (4), (6), and (15) of the Bankruptcy Code was January 12, 2004. No such
complaints were filed. On May 25, 2004, the chapter 7 trustee initiated an adversary
proceeding against Ms. Mohtasham to avoid as a preference any transfers made to her by the
debtor within 90 days of the filing of the bankruptcy petition under the equitable distribution
settlement in the divorce case. Ms. Mohtasham filed her third-party complaint against the
debtor on July 25, 2004, seeking a determination that the debtor's obligations under the
settlement agreement and the divorce decree were nondischargeable under §§ 523(a)(5) and
(15), Bankruptcy Code. By order and opinion entered on October 26, 2004, this court denied
the debtor's motion to dismiss the third-party complaint with respect to the § 523(a)(5) claims
for support. The court also denied the motion to dismiss with respect to those obligations that
did not exist on the filing date (because the debtor had already paid them) but which would be
reinstated if the trustee prevailed in his avoidance action. All remaining claims under
§ 523(a)(15) for obligations (other than support) arising under the property settlement
agreement and divorce decree were dismissed because they were time-barred.

3

On January 19, 2005, the court entered an order granting Ms. Mohtasham summary judgment determining that the debtor's obligation to pay spousal support and child support was nondischargeable under § 523(a)(5).  By order entered on February 16, 2005, the court approved a settlement between the trustee and Ms. Mohtasham regarding the trustee's preference action.  Under the settlement, Ms. Mohtasham paid the trustee $15,000.  This left for trial the following issues: (1) the dischargeability under § 523(a)(15) of Dr. Ghanei's indemnity obligation, if any, to Ms. Mohtasham arising out of the $15,000 preference settlement paid to the trustee; (2) the dischargeability under § 523(a)(5) of Dr. Ghanei's obligations to make payments on the second mortgage and to make college fund payments; and (3) the dischargeability of his obligation to transfer his interest in the Florida timeshare.

B.

Dr. Ghanei is presently 40 years old and has worked as a physician since 1996.  His adjusted gross income for 2002 as shown on his form 1040 federal tax return was $89,256.  His adjusted gross income for 2003 and 2004 was $83,428 and $99,378, respectively.  At trial, Dr. Ghanei testified that his highest level of income for one year was achieved in 2001, when he made approximately $130,000 in salary that year, along with an $18,000 bonus.  The state court divorce decree, issued in 2003, found the debtor's earning capacity to be $140,000 annually.  The debtor's income schedules included in his bankruptcy petition show monthly after-tax income of $5,540.  Dr. Ghanei testified that he expects to earn $6,486 per month in after-tax income, given an hourly rate of $60 and a 40-hour work week.  The debtor's income schedules included in his bankruptcy petition show monthly expenses of $6,968.99.  About a third of this amount consists of alimony, maintenance, and support expenses.  Dr. Ghanei

4

testified that, even without taking into account payments on the second mortgage and the college education trust fund payments, his monthly expenses would be $6,900.

Dr. Ghanei worked as a physician at Bryans Road Urgent Care, located in Charles County, Maryland, from 1996 until 2001.  It is unclear where Dr. Ghanei worked during 2002 and 2003, although his W-2 forms for those taxable years indicate that his employer was Family Med Care, LLC, an entity based out of Southern Maryland that contained the Bryans Road practice, along with practices in Hayfield, Virginia, and New Market, Maryland.  The Bryans Road practice had merged with the Hayfield and New Market practices in 2001, thus creating the Family Med Care, LLC, "umbrella" entity.  Since January 2004, when the Bryans Road practice was split and sold, Dr. Ghanei has worked as a physician at Hayfield Medical Center, LLC, located in Alexandria, Virginia.  According to his employment agreement with the Hayfield clinic, Dr. Ghanei is paid at an hourly rate of $60.  Beginning in July 2004, Dr. Ghanei also began working at Prime Care America, located in Waldorf, Maryland.  At trial, Dr. Ghassan Hatoum, with whom Dr. Ghanei has worked since 1996, testified that the Prime Care office will be closing, and Dr. Hatoum is negotiating to sell the Hayfield clinic.  Dr. Hatoum also testified that he had just given Dr. Ghanei a termination letter the week before trial.

According to both Dr. Ghanei and Dr. Hatoum, the debtor has no financial or legal interest in the Hayfield clinic, as he is only an employee there.  Although the third-party plaintiff suggested at trial that Dr. Ghanei is a "secret owner" who has at least some interest in a medical partnership, the court finds that there is insufficient evidence to support this proposition.

Dr. Ghanei admitted at trial that he was charged with document theft (from Ms.

Mohtasham) and placed on probation for a year.  The debtor believes that this misdemeanor

conviction may place a cloud on his ability to obtain future employment.

C.

The third-party plaintiff, Ms. Mohtasham, is presently 41 years old and has worked as

a real estate broker for ten years.  In her work, she has handled deals involving both

commercial and residential real estate properties, as well as raw land.  At trial, Ms.

Mohtasham testified that she does not advertise her business but instead obtains clients

through referrals.  Although evidence was presented at trial that she sold property located at

1530 Spring Gate Drive, McLean, Virginia, in 2005 for $479,000, she denies receiving a

commission for this transaction.  Ms. Mohtasham last received a commission in November

2004.  However, she expects to receive a $24,000 commission resulting from the sale of real

property located at 1657 Beulah Road, Vienna, Virginia.  Her 2003 and 2004 federal income

tax returns show adjusted gross income of $27,986 and $68,268, respectively.  The state court

divorce decree determined Ms. Mohtasham's earning capacity to be $60,000 annually.  At

trial, she testified that on average her monthly income is between $3,000 and $4,000, not

including spousal and child support.  With the support, she estimates her yearly income to be

in the range of $61,000-$62,000.  She also testified that her monthly expenses are between

$8,000 and $9,000.

At trial, both sides presented evidence regarding rental properties owned by Ms.

Mohtasham.  She testified that she owns rental property located at 405 Nelson Drive, Vienna,

Virginia, that is worth about $600,000, with a mortgage of $490,000 against it.  Ms.

Mohtasham also testified that she took out a $100,000 second trust line of credit on this

property in 2000.  Ms. Mohtasham has owned this property since she purchased it at

foreclosure in 1999.  She testified that she receives about $1,700 per month in rent from an

upstairs tenant and $1,300 from a basement tenant residing on this property.  Ms. Mohtasham

also testified that she had been paying $2,096 per month towards the first deed of trust on the

Nelson Drive property.  Neither party presented evidence as to the monthly payment amount

on the $100,000 second trust line of credit on the property.

In addition, by virtue of the equitable distribution agreement between the parties, Ms.

Mohtasham currently owns the marital residence located at 1542 Crowell Road, Vienna,

Virginia.  She testified that the market value of this home is between $700,000 and $800,000.

There were originally two deeds of trust against the residence.  Through a refinance, the

second mortgage (the one Dr. Ghanei was required to pay under the terms of the property

settlement agreement) was rolled into a new first mortgage, and afterwards a separate second

deed of trust was added and later refinanced.  Ms. Mohtasham testified that at the time of the

divorce, the first mortgage had a $400,000 balance and the second mortgage $50,000.  At that

time, monthly payments on the first mortgage were between $3,200 and $3,300, and the

second mortgage payments were $200 per month.  The current total mortgage balance on the

Crowell Road residence is $601,000, consisting of a $429,000 first trust and approximately

$172,000 for a second trust line of credit, which is now exhausted.  Ms. Mohtasham testified

that she currently pays $3,200 per month on the first mortgage and between $750 and $850

monthly on the second mortgage.

Some of the discussion at trial centered on Ms. Mohtasham's alleged ownership

interest in a real estate entity named Nest Estates.  Ms. Mohtasham testified that although she

started the business in January 2000, she left it in late 2003 because she did not have

sufficient funds to invest in the company.  Nest Estates is presently owned by Ms.

Mohtasham's mother and two brothers.  Nest Estates does not currently operate as a business,

although it owns one piece of real property located at 10200 Colvin Run Road, Great Falls,

Virginia.  Although Dr. Ghanei attempted to portray Ms. Mohtasham as an owner of Nest

Estates, the court finds that the evidence presented is insufficient to establish her ownership.

<u>Discussion</u>

A.

Two types of divorce-related debts survive a chapter 7 bankruptcy discharge.  The first

category consists of debts "to a spouse, former spouse, or child of the debtor, for alimony to,

maintenance for, or support of such spouse or child, in connection with a separation

agreement, divorce decree or other order of a court of record[.]" 11 U.S.C. § 523(a)(5).  The

second category consists of debts, other than support debts, "incurred by the debtor in the

course of a divorce or separation or in connection with a separation agreement, divorce decree

or other order of a court of record[.]" 11 U.S.C. § 523(a)(15).  The latter, however, is subject

to the exception that such debts will be discharged if

> (A) the debtor does not have the ability to pay such debt from
> income or property of the debtor not reasonably necessary to be
> expended for the maintenance or support of the debtor or a
> dependent of the debtor and, if the debtor is engaged in a
> business, for the payment of expenditures necessary for the
> continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor
> that outweighs the detrimental consequences to a spouse, former
> spouse, or child of the debtor[.]

*Id.*  Thus, debts for spousal or child support are never dischargeable, but other types of

divorce-related debts, including property settlements or equitable distribution judgments, will

8

be discharged if the debtor cannot afford to pay them or if the benefit to the debtor from

discharging them outweighs the detriment to the other party.

An obligation may be in the nature of support, so as to be nondischargeable under

§ 523(a)(5), even if not specifically denominated as support in a property settlement

agreement or divorce decree. *Melichar v. Ost (In re Melichar)*, 661 F.2d 300, 303 (4th Cir.

1981) ("The proper test of whether the payments are alimony lies in proof of whether it was

the intention of the parties that the payments be for support rather than as a property

settlement.") (decided under Bankruptcy Act of 1898); *Tilley v. Jessee*, 789 F.2d 1074, 1077

(4th Cir. 1986) ("[T]he true intent of the parties rather than the labels attached to an

agreement or the application of state law [controls]."); *Long v. West (In re Long)*, 794 F.2d

928, 931 (4th Cir. 1986) (intent of divorce court governs where obligation arises from that

court's decree). The burden of showing that a particular obligation is in the nature of

alimony, maintenance, or support is on Ms. Mohtasham, as the party opposing the

dischargeability of the debt. *Long*, 794 F.2d at 930.

## B.

Because nondischargeability under § 523(a)(15) of the debtor's indemnity obligation

may depend on whether he has the ability to pay this amount, and because Dr. Ghanei's

ability to pay may depend on whether the court finds his obligations as to the college fund and

second mortgage nondischargeable under § 523(a)(5), the court will first analyze the

§ 523(a)(5) claims, beginning with the debtor's obligation to make college fund payments.

Paragraph 7A of the equitable distribution agreement describes Dr. Ghanei's obligation:

7. College Fund
A. Husband to pay $70,000 into a Trust fund for the children's college
education over an eight year period, in equal monthly payments beginning

9/1/03, with the Wife as Trustee.  Wife to send annual statements of account to
him or to his attorney.  This shall be deemed to be a lump-sum child support
not dischargeable in bankruptcy, nor shall this obligation be used as a defense
to the child support obligation of the Husband.  Provided however, that said
sums are solely for the education of the children and shall not be used for any
other purpose without the written consent of both parties.  The balance of any
such funds after both children obtain a college degree or reach age 25 shall be
divided equally between the children.

The great weight of the case law points to nondishargeability of a debtor's obligation,

arising out of a separation agreement, to provide for a child's college education payments.

Such a debt is nondischargeable under § 523(a)(5) if it is support-related.  Looking first

within the Fourth Circuit, two courts have held that a debtor's obligation to make a child's

college education payments is in the nature of support.  In *In re Crosby*, 229 B.R. 679 (Bankr.

E.D. Va. 1998), the debtor's ex-wife filed a proof of claim for her children's college

education expenses, which through a separation agreement the debtor agreed to pay.[2]  The

court stated that determination of whether a debt is in the "nature of support" is based on the

intent of the parties, and the court proceeded to apply a four-factor test to determine intent: (1)

actual language of the agreement; (2) the financial position of the parties at the time of the

agreement; (3) the function served by the obligation at the time of the agreement; and (4)

evidence of overbearing.  *Id.* at 681 (citing *Catron v. Catron (In re Catron)*, 164 B.R. 912, 919

(E.D. Va. 1994)).  The court concluded that the children's college education payment

obligation was in the nature of support and thus entitled to priority status.  *Id.* at 682.  The

separation agreement contained a child support heading, and the structure of the agreement

---

[2] The specific issue in that case was not dischargeability of the debtor's obligation, but
whether the debt was entitled to priority status under § 507(a)(7) in the debtor's chapter 13
plan.  However, the *Crosby* court noted that the language of § 507(a)(7) is identical to that of
§ 523(a)(5), so that court's analysis is relevant here.

indicated an intention to create a support obligation.  In addition, the debtor's income was

substantially higher than that of his wife, and the evidence at trial showed that the parties had

planned on providing a college education for their children before the separation took place.

*Id.* at 681-82.

Another decision within the Fourth Circuit involving dischargeability of a separation

agreement obligation involving children's college expenses is *Grijalva v. Grijalva (In re

Grijalva)*, 72 B.R. 334 (S.D. W. Va. 1987).  In that case, the chapter 7 debtor agreed in a

separation agreement to pay for the education and living expenses of his children who

attended college or vocational school.  *Id.* at 338.  The court held that this debt was

nondischargeable regardless of whether the children were past the age of majority.  *Id.*

Several courts outside of the Fourth Circuit have held that a debtor's obligation to pay

his children's post-secondary education expenses is nondischargeable because it is in the

nature of support.  *See, e.g.*, *Warren v. Warren (In re Warren)*, 160 B.R. 395 (Bankr. D. Me.

1993); *Soffel v. Shaw (In re Shaw)*, 299 B.R. 107 (Bankr. W.D. Pa. 2003); *Leslie v. Leslie (In re

Leslie)*, 181 B.R. 317 (Bankr. N.D. Ohio 1995); *Bush v. Bush (In re Bush)*, 154 B.R. 69 (Bankr.

S.D. Ohio 1993); *Portaro v. Portaro (In re Portaro)*, 108 B.R. 142 (Bankr. N.D. Ohio 1989);

*Boyle v. Donovan*, 724 F.2d 681 (8th Cir. BAP 1984); *Seixas v. Booth (In re Seixas)*, 239 B.R.

398 (9th Cir. BAP 1999); *Pierce v. Pierce (In re Pierce)*, 95 B.R. 154 (Bankr. N.D. Cal. 1988);

*Trump v. Trump (In re Trump)*, 309 B.R. 585 (Bankr. D. Kan. 2004); *Ozey v. Ozey (In re Ozey)*,

166 B.R. 169 (Bankr. N.D. Okla. 1994); *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902 (11th

Cir. 1985); *Christison v. Christison (In re Christison)*, 201 B.R. 298 (Bankr. M.D. Fla. 1996);

*Casler v. Casler (In re Casler)*, 94 B.R. 741 (Bankr. M.D. Fla. 1988).

11

The *Boyle* and *Harrell* cases are particularly instructive.  In *Boyle*, the debtor had no duty under Arkansas law to pay for his son's college education because he had already reached the age of majority.  *Boyle*, 724 F.2d at 683.  However, the court stated that this did not prevent him and his ex-wife from entering into an agreement whereby the debtor's obligation to pay the college expenses functioned as support.  In addition, the court characterized the college expense agreement as support-related because it "provid[es] for the economic safety of the sons during their college years[.]" *Id.*  In *Harrell*, the Eleventh Circuit expanded on the notion presented in *Boyle* that state law duty to pay is distinct from obligation to pay in bankruptcy.  *Harrell*, 754 F.2d 902, 905 (11th Cir. 1985) ("[T]he nature of debtor's promise to pay education expenses and child support is not determined by the legal age of majority under state law .... [T]he absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy.").

This court was able to find only two published cases in which an obligation within a separation agreement to pay a child's college expenses was found not to be in the nature of support and therefore dischargeable.  In *Hale v. Cowell (In re Hale)*, 289 B.R. 788 (1st Cir. BAP 2003), the court held that the debtor's obligation under a separation agreement to pay his daughter's college tuition was dischargeable, noting that the agreement contained the statement that "child support is not intended to include private school or college education costs."  The court decided that based on the facts of the case regarding the circumstances in which the agreement was executed, the debtor's agreement to pay the tuition expenses "was meant to resolve [plaintiff's] claims against [debtor's] property" and was "not maintenance and support for the child." *Id.* at 797.  In *Farr v. Hack (In re Hack)*, 45 B.R. 999 (Bankr. M.D.

Pa. 1985), the court held that a chapter 7 debtor's obligation to pay for his child's college

tuition was dischargeable, noting that the divorce decree referred to language in the Master's

Report indicating that support "was not a subject of the hearing which lead [sic] to the decree

in divorce."

In the present case, Dr. Ghanei's obligation under the equitable distribution agreement

to make college fund payments is nondischargeable because it is in the nature of support.

Unlike the agreement at issue in *Hale*, the language of the agreement in the present case

favors treating the college expense obligation as support-related.  Paragraph 7 of the

agreement states that "[t]his shall be deemed to be a lump-sum *child support*" (emphasis

added).  In addition, the income disparity between Dr. Ghanei and Ms. Mohtasham was

substantial at the time the agreement was executed.  Based on the state court's findings, Dr.

Ghanei was capable of earning $140,000 per year, compared to Ms. Mohtasham's yearly

income-earning potential of $60,000.  This significant disparity bolsters the notion that Dr.

Ghanei was providing for support by agreeing to pay into the college fund.  Moreover, the

provision of an adequate education –  while perhaps not as fundamental as food, clothing,

shelter, and medical care – would certainly be considered by most parents as an important part

of raising a child.   Although Dr. Ghanei would not be obligated under Virginia law to provide

for child support beyond the age of majority,[3] several courts, including *Harrell*, have pointed

out that the absence of a state law duty to pay child support does not mean that the

---

[3] In Virginia, child support "continue[s] to be paid for any child over the age of 18 who is (i)
a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the
party seeking or receiving child support until such child reaches the age of 19 or graduates
from high school, whichever first occurs."  Va. Code Ann. § 20-124.2.

corresponding debt is dischargeable in bankruptcy.  Finally, Ms. Mohtasham's testimony

indicates that the parties intended that the college fund obligation be treated as support:

> Q:  Okay.  What was your understanding then with respect to the college fund that
> [Dr. Ghanei] would contribute to?
> A:  Support for the children to make sure that they will have.

(Trial Transcript at 12-13).  For these reasons, and based on the extensive case law supporting

nondischargeability, Dr. Ghanei's obligation under the equitable distribution agreement to pay

$70,000 into the college fund is nondischargeable under § 523(a)(5).

C.

The court will next address the debtor's obligation to pay what would have been the

remaining balance (approximately $20,000) of the former second mortgage on the marital

residence.  Paragraph 1E of the equitable distribution agreement states the following:

> 1.  Marital Residence
>
> * * *
>
> E.  The amount of the remaining balance of the second
> trust/home equity line after payment of the $30,000
> (approximately $20,000) shall be owed to the Wife by the
> Husband who shall pay to the Wife in equal monthly installments
> (except for the last payment which will constitute the pay off)
> amortized over a five year period at the current interest rate of the
> Countrywide credit line.  This shall be deemed to be a lump-sum
> alimony not dischargeable in bankruptcy, not taxable to the Wife
> and not deductible by the Husband.

As previously discussed, the labels the parties have attached to the obligation, although

entitled to consideration, are not determinative, and it is ultimately for the finder of fact to

determine if the debt is "actually" in the nature of support rather than a settlement of property

rights.  Courts addressing the dischargeability of a mortgage payment obligation in a

separation agreement have split on whether such an obligation constitutes support, depending

14

on the particular facts of the case.  Even within the Fourth Circuit, courts have come down on

both sides of the issue, depending on the factual circumstances of the case.  In *Hughes v.*

*Hughes (In re Hughes)*, 164 B.R. 923 (E.D. Va. 1994), the debtor was obligated under a

settlement agreement to transfer his interest in the marital residence to his ex-wife, and then

continue making mortgage payments on the property, regardless of whether his ex-wife

remarried.  The court held that the debtor's obligation was nondischargeable under

§ 523(a)(5), noting that the language of the agreement indicated an intent to provide support

to debtor's ex-wife.  *Id.* at 927.  In addition, the court based its conclusion on the disparity in

income between the parties.  *Id.* at 928.  In *Burns v. Burns (In re Burns)*, 186 B.R. 637, 642

(Bankr. D.S.C. 1992), the court held that a settlement agreement provision to pay the second

mortgage and hold debtor's ex-wife harmless created a nondischargeable debt, noting that the

plaintiff was still residing on the property and was relying on the payment of the second

mortgage as an element of support.  Essentially the same conclusion was reached by the court

in *Cribb v. Cribb (In re Cribb)*, 34 B.R. 862 (Bankr. D.S.C. 1983).  Decisions within the

Fourth Circuit holding such debt dischargeable include *Grijalva v. Grijalva (In re Grijalva)*, 72

B.R. 334, 337 (S.D. W. Va. 1987) (finding that the obligation was dischargeable based on the

language and structure of the separation agreement and concluding that the payment

arrangement resembled a property division instead of a support obligation), and *Boyd-Leopard*

*v. Douglass (In re Boyd-Leopard)*, 40 B.R. 651, 655-56 (Bankr. D.S.C. 1984) (holding that the

obligation was dischargeable because debtor's ex-wife no longer resided on the property and

the obligation did not terminate upon her death or remarriage, thus resembling a property

settlement rather than a support-related debt).

The issue in the present case is conceptually made difficult by the fact that the second

mortgage itself has been paid as a result of a refinance of the then-existing first and second

mortgages, resulting in a new first mortgage with a monthly payment amount no greater than

the original first mortgage alone.  It is true that the settlement agreement did not in literal

terms require that the debtor pay the second mortgage but rather that he pay Ms. Mohtasham

an "amount" equal to the then-remaining balance on the mortgage amortized over five years.[4]

Presumably that "amount" and amortization was chosen because it would enable Ms.

Mohtasham to make the monthly payments on the mortgage as they became due.  If that were

the case, the mere payoff of the mortgage through a refinance of the debt against the property

would not necessarily moot Ms. Mohtasham's need for the income stream in order for her to

meet the expense of maintaining a roof over her head.

In this connection, a number of factors support a determination that the obligation is in

the nature of support:  (1) the state court's finding of a significant income disparity between

Dr. Ghanei and Ms. Mohtasham at the time the separation agreement was executed; (2) the

fact that the obligation is to be paid over time, rather than a lump sum; and (3) the fact that the

settlement agreement describes the debt as "alimony."  Other factors support an opposite

conclusion:  (1) the agreement under which the obligation arises is entitled "Agreed

Settlement of *Equitable Distribution Issues*" (emphasis added) and expressly states that it does

---

[4]  No testimony or exhibits were offered at trial as to the monthly amount due under the
formula set forth in the property settlement agreement.  In her trial brief, Ms. Mohtasham
states that the monthly payment on the obligation is $389 per month. However, she testified
at trial that the payment on the former second deed of trust was $200 per month.  The
discrepancy may perhaps be explained by a difference in the actual amortization of the
second deed of trust and the amortization required by the property settlement agreement.  In
any event, for the purpose of this opinion the court will assume, without deciding, that the
payment required by the property settlement agreement is $389 per month.

16

not resolve "issues of spousal support and child support;" (2) the obligation does not

terminate upon Ms. Mohtasham's death or remarriage; and (3) for tax purposes, the obligation

is not treated like alimony.  Essentially, the issue is whether the obligation to make monthly

payments measured by the amount of the former second mortgage more closely resembles

satisfaction of a property interest or instead a support-related obligation that provides shelter

for Ms. Mohtasham.  Although the question is admittedly close, the fact that the payments are

made directly to Ms. Mohtasham, that they are periodic in nature, and that she resides in the

house is sufficient, in the court's view, to tip the balance in favor of a finding that the

payments were intended to allow her to remain in, and make the payments on, the house.

Indeed, Ms. Mohtasham testified at trial that this was the parties' intent:

> Q:    Now, with respect to second mortgage, what's the genesis of that
> provision that a 30,000-dollar, lump-sum amount be paid and that
> there be monthly payments?
>
> * * *
>
> A:    It was to be for the support for the payment, mortgage, the
> second mortgage.  It was agreed that it would be a support and a
> payment towards the second mortgage so I can keep up with it
> and so that the children are not disturbed anymore.  We had
> moved eight times for him, for his practice, for his business.  We
> did not want to move anymore.

(Trial Transcript at 14-15).  While such testimony could possibly be viewed as self-serving, it

is consistent with the surrounding circumstances and thus entitled to some weight.  For all

these reasons, the court determines that Dr. Ghanei's obligation to make periodic payments

measured by the amount of the former second mortgage is in the nature of support and

therefore nondischargeable under § 523(a)(5).

D.

17

The court will next address the debtor's obligation to reimburse Ms. Mohtasham for the $15,000 she paid the trustee to settle the preference complaint.  There is no dispute that the settlement related to the $30,000 payment Dr. Ghanei had made under the marital settlement agreement to pay down the second deed of trust.  As discussed in the prior memorandum opinion, the disgorgement of a preference creates a corresponding claim which is treated for bankruptcy purposes as a prepetition claim.[5]  § 502(h), Bankruptcy Code.  Ms. Mohtasham has not argued that the $30,000 lump-sum payment obligation was in the nature of support,[6] and the court – notwithstanding its ruling with respect to the periodic payments calculated by reference to the $20,000 remaining balance – would have to find that the lump-sum obligation was not in the nature of support.

Section 523(a)(15) of the Bankruptcy Code makes obligations other than support arising under a separation agreement or divorce decree nondischargeable *unless* the debtor

_____

[5] It is an interesting question whether the claim is one against the bankruptcy estate only or also against the debtor.  To the extent that the underlying debt upon which the recovered payment was made was dischargeable, the difference is immaterial, but it obviously becomes a factor when, as here, the underlying obligation is potentially nondischargeable. From the debtor's perspective, he has already paid the debt, and the trustee's recovery of the payment could arguably be viewed as conceptually no different than if, for example, Ms. Mohtasham had lost the money to a thief or at the gaming tables after having received it. The court believes it more useful however, to view preference recovery as simply turning the clock back in time and treating as done what the debtor should have done – that is, apply the limited funds (when he did not have enough money to pay all his creditors) ratably to all his debts, not merely the one debt in question.  The payment is thus properly treated as reversed, which would leave the debtor liable for the underlying debt to the extent it were determined to be non-dischargeable.

[6] Had the obligation been in the nature of support rather than a property settlement, Ms. Mohtasham would have had a complete defense to its recovery by the trustee, since a trustee cannot recover a bona fide payment of a debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement or divorce decree. § 547(c)(7), Bankruptcy Code.

shows that he "does not have the ability to pay such debt from income or property ... not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" or that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to ... a former spouse[.]" § 523(a)(15)(A) & (B), Bankruptcy Code.  The debtor bears the burden of proof, by a preponderance of the evidence, both as to his inability to pay and as to the benefit of discharge outweighing the detriment to the former spouse.  *Sparagna v. Metzger (In re Metzger)*, 232 B.R. 658, 663 (Bankr. E.D. Va. 1999); *Craig v. Craig (In re Craig),* 196 B.R. 305, 308-09 (Bankr. E.D. Va. 1996); *King v. Speaks (In re Speaks)*, 193 B.R. 436, 441 (Bankr. E.D. Va. 1995).  Because § 523(a)(15) is phrased in the disjunctive, however, a debtor need prove only one of the two possible grounds for discharging the debt.  *Metzger*, 232 B.R. at 663; *Craig*, 196 B.R. at 309.

With regard to ability to pay, the test is not whether the debtor has the ability to pay the debt as of a particular time — such as the date of trial — but whether the debtor can pay the debt over time.  *Metzger*, 232 B.R. at 663; *Craig*, 196 B.R. at 310.  "A debtor is able to pay if, 'after taking into account all reasonably necessary living expenses of the debtor and his or her dependents, there exists disposable income from which the debt could be paid.'" *Paul v. Forman (In re Forman)*, 260 B.R. 758, 761 (E.D. Va. 1999), *aff'd*, 217 F.3d 838 (4th Cir. 2000); *Metzger*, 232 B.R. at 663.

Dr. Ghanei's schedules show an estimated monthly pre-tax income of $8,400 and after-tax income of $5,040.  At trial, Dr. Ghanei testified that he expects to earn $60 an hour, which equates to $10,000 per month in pre-tax income, assuming a 40-hour workweek and 50 weeks worked during the year.  Applying an estimated tax rate of 40%, the debtor's expected

monthly after-tax income is $6,000. The court will use this income number, instead of the

income figure listed in the debtor's schedules, for the purpose of determining Dr. Ghanei's

ability to pay the $15,000 because it is a more current number and was provided under oath at

trial. The debtor's estimated expenses taken from his schedules are as follows:

| | |
|---|---:|
| Alimony | $2,000 |
| Child support | $857 |
| College fund | $730 |
| 2nd deed of trust | $389 |
| Rent/mortgage | $1,856 |
| Utilities | $136 |
| Home maintenance | $29 |
| Food | $250 |
| Clothing | $100 |
| Laundry | $10 |
| Medical/dental | $50 |
| Transportation | $300 |
| Recreation | $100 |
| Auto insurance | $42 |
| Car tax | $20 |
| Child care | $100 |
| | |
| Total expenses | $6,969 |

As shown in the table above, the debtor's schedules already included the college fund

and second deed of trust obligations at issue in this proceeding. At trial, Dr. Ghanei testified

that his current estimated monthly expenses without taking into the account the college fund

and second mortgage debts amount to $6,900. Adding these two additional expenses would

result in a monthly expense amount of $8,019. Regardless of which expense amount is used,

Dr. Ghanei's monthly expenses exceed his after-tax income. Therefore, the debtor has met

his burden in showing that he does not have the ability to pay the $15,000 indemnity

obligation.

Even if Dr. Ghanei could not prove that he lacked ability to pay the $15,000, the

benefit to him of discharging the obligation would outweigh the detriment to Ms. Mohtasham.

Courts within the Fourth Circuit use a "totality of the circumstances" approach in making

such a determination, considering, among other factors, the income and expense of the parties,

whether the non-debtor spouse is jointly liable on the debt, the number of dependents, the

nature of the debt, the reaffirmation of any debt, and the non-debtor spouse's ability to pay.

*Sparagna v. Metzger (In re Metzger)*, 232 B.R. 658, 665 (Bankr. E.D. Va. 1999).

Neither party is financially well off. As already described, Dr. Ghanei's expenses

exceed his income, even though his estimated pre-tax income exceeds $100,000 per year. The

main reason for this is his divorce-related obligations, which account for approximately one-

half of his total monthly expenses.[7] As for Ms. Mohtasham, it appears that her monthly

expenses exceed her monthly income. At trial, she testified that her estimated yearly income

including support was approximately $61,200-$62,000. She also stated that her expected

monthly expenses are in the range of $8,000-$9,000. At the very least, she is paying about

$4,000 total per month on the Crowell Road mortgages and another $2,096 on the Nelson

Drive first deed of trust. Adding in the monthly payment for the second trust line of credit on

the Nelson Drive property (the amount of which was not disclosed at the trial), along with her

other routine monthly expenses, results in a total monthly expense amount not far off from her

in-court estimate. In any event, her monthly expenses exceed her monthly income. In

addition, although Ms. Mohtasham has title to the Crowell Road and Nelson Drive properties,

---

[7] Dr. Ghanei's monthly expenses for alimony ($2,000) and child support ($857), summed
together with the college fund ($730) and second deed of trust ($389) obligations which the
court has determined to be nondischargeable, equal $3,976 per month. This amount is
approximately 57% of the expenses listed on the debtor's bankruptcy schedules and 49.6%
of the expenses to which he testified at trial.

which amount to a fair market value exceeding $1.3 million, the mortgages on these

properties surpass $1.1 million, leaving her with a modest equity cushion.

Although neither party is well off, given the amounts that Dr. Ghanei will be required

to pay into the college trust and on account of the former second deed of trust, and given the

equity Ms. Mohtasham has in the real estate, the court finds that the benefit to Dr. Ghanei

from discharging his obligation to pay (essentially a second time) the $15,000 obligation that

was resurrected by the trustee's preference recovery outweighs the detriment to Ms.

Mohtasham.  Put another way, although neither party can afford a $15,000.00 hit, she can

afford it better than he, for the simple reason that her real estate holdings give her greater

borrowing power, as amply demonstrated by her history of refinancing the properties in

question.

### E.

Finally, the court will address Dr. Ghanei's obligation under the settlement agreement

to transfer the Florida timeshare to Ms. Mohtasham by special warranty deed.  As a

preliminary matter, it is important to note that only *debts* may be discharged.  *See* § 524(a)(2),

Bankruptcy Code.  The Code defines "debt" as "liability on a claim."  § 101(12), Bankruptcy

Code.  A "claim" is defined as a "right to payment, whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured, or unsecured[.]"  § 101(5)(A), Bankruptcy Code.  While

the definition of "claim" is broad, it does not include property interests.  *See Brogan v. Brogan,*

31 Va.App. 769, 525 S.E.2d 618 (Va. Ct. App. 2000) (husband's obligation to pay wife

one-half of his civil service retirement pension was not discharged in post-divorce bankruptcy

because it was a property right, not a debt).  The question therefore is whether Dr. Ghanei's

obligation to transfer the timeshare constitutes a "debt" in the sense of a right to payment.

In *Roshan v. Nouri (In re Nouri)*, 304 B.R. 155 (Bankr. M.D. Pa. 2003), the court dealt

with this question.  In that case, a chapter 7 debtor was obligated under a state court divorce

decree to transfer the marital residence to his ex-wife.  The court first noted that the state

court order removed from the debtor any equitable interest he may have had in the property,

leaving him at best with legal title.  *Id.* at 161.  The court then went on to hold that an

obligation to transfer property was not an obligation to pay, as there was no debtor-creditor

relationship between the parties as to the property.  *Id.*  The court concluded by stating that the

state court order did not create a "debt" under the Bankruptcy Code, so the obligation to

transfer property was not discharged.  *Id.*

The same result is appropriate in the present case.  Dr. Ghanei's obligation to transfer

the timeshare is not a "debt" under the Bankruptcy Code that requires payment.  Execution of

the settlement agreement was sufficient to transfer equitable title to Ms. Mohtasham, a right

that can be enforced by specific performance.   Because the discharge applies only to debts,

Dr. Ghanei's obligation to transfer the property was not discharged in his case.

A separate judgment will be entered consistent with this opinion.

Date: _____          _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge

Copies to:

David E. Jones, Esquire
11211 Waples Mill Road, Suite 210
Fairfax, VA   22030
Counsel for the third-party plaintiff

Arman Ghanei
1563 Sunstone Drive
McLean, VA   22102
Third-party defendant *pro se*

Robert M. Gants, Esquire
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314
Counsel for the plaintiff